940 So.2d 483 (2006)
Barbara JOSEPH, Appellant,
v.
Lena CHANIN, Appellee.
No. 4D05-3515.
District Court of Appeal of Florida, Fourth District.
October 4, 2006.
Rehearing Denied November 14, 2006.
*485 Jay L. Kaufman and James A. Herb of Herb & Kaufman, P.A., Boca Raton, for appellant.
Vanessa D. Sloat of Sachs Sax Klein, Boca Raton, for appellee.
GROSS, J.
In this case, we hold that where a joint tenant in a bank account wrongfully transfers funds to a third party, the other joint tenant may maintain a cause of action for conversion against the third party who (1) holds the identifiable funds and (2) refuses a demand to restore the funds to the other joint tenant.
Lena Chanin lived with Meyer Joseph in his condominium from 1992 until his death in 2001.[1] Beginning in 1992, they both made contributions to a checking account titled solely in Meyer Joseph's name. They used this "pooled" account to pay their joint living expenses. When Chanin moved into the unit with Joseph, they each agreed to pay $1,100 a month for the shared expenses.
In 1998, Chanin became a joint owner of the pooled checking account. After Meyer's death, Chanin discovered that their average joint expenses had been only $900 a month; she also learned that Meyer had taken money from the pooled checking account to pay personal expenses and to fund a separate savings account at AmTrust Bank. Meyer named his daughter, Barbara Joseph, as the beneficiary of the AmTrust account. On the date of Meyer Joseph's death, the AmTrust account held $48,720.52.
Once she realized that Meyer had taken more than his share of the pooled account, Chanin asked Barbara Joseph for the funds in the AmTrust account. At first, Barbara Joseph said that Chanin should have the funds for having taken such good care of Meyer over the years. However, once Barbara Joseph learned of the amount of money in the account, she withdrew it for her own use and refused to give any of it to Chanin.
Chanin sued Barbara Joseph on three theories: (1) to impose a constructive trust based on unjust enrichment, (2) fraudulent conveyance, and (3) conversion. Barbara Joseph moved to dismiss for lack of personal jurisdiction; the trial court granted the motion as it applied to the unjust enrichment and fraudulent conveyance counts, but denied the motion as it applied to the conversion count. This court affirmed the trial court's ruling. See Joseph v. Chanin, 869 So.2d 738 (Fla. 4th DCA 2004).
The case went to jury trial on the issue of whether Barbara Joseph converted funds in the AmTrust account.[2] The jury found that Joseph had converted the funds *486 and determined that Chanin had suffered damages of $48,720.52. The circuit court entered a final judgment on the jury's verdict.
We write to address Barbara Joseph's contention that Chanin failed to establish a cause of action for conversion as a matter of law under Sitomer v. Orlan, 660 So.2d 1111 (Fla. 4th DCA 1995).
We hold that under the facts of this case, Chanin's recovery on a conversion theory was proper under Florida law.
Conversion is defined as "an act of dominion wrongfully asserted over, and inconsistent with, another's possessory rights in personal property." Goodwin v. Alexatos, 584 So.2d 1007, 1011 (Fla. 5th DCA 1991); see also Belford Trucking Co. v. Zagar, 243 So.2d 646, 648 (Fla. 4th DCA 1970). Withdrawal of funds from a bank account may form the basis of an action for conversion "if the specific money in question can be identified." Allen v. Gordon, 429 So.2d 369, 371 (Fla. 1st DCA 1983); see also Brand v. Old Republic Nat'l Title Ins. Co., 797 So.2d 643, 646, n. 3 (Fla. 3d DCA 2001). "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit. . . ." Belford Trucking, 243 So.2d at 648.
The pooled checking account was a joint tenancy with right of survivorship. In such an account, each tenant "has the right, against the other, only to his or her individual interest in the account" during the lifetime of the joint tenants; funds in the account belong to the parties in proportion to the net contributions by each to the sums on deposit. Nationsbank v. Coastal Utils., Inc., 814 So.2d 1227, 1229 (Fla. 4th DCA 2002). The supreme court recognized this concept in Beal Bank, SSB v. Almand & Associates, 780 So.2d 45 (Fla.2001), when it wrote that "[i]n a joint tenancy with right of survivorship, each person has only his or her own separate share (`per my')[.]" Id. at 53. The shares in the joint account "[are] presumed to be equal for purposes of alienation[.]" Id.
One joint tenant may bring a conversion action against another joint tenant who wrongfully appropriates more than his share of the money from a joint tenancy account. See Hamilton v. Trapp, 392 So.2d 1001 (Fla. 4th DCA 1981); Allen, 429 So.2d at 371; Nationsbank, 814 So.2d at 1230. Placement of the money into the AmTrust account made it "capable of identification," Belford Trucking, 243 So.2d at 648, so that Chanin could have sued Meyer Joseph or his estate for conversion from the pooled checking account.
As the beneficiary of the funds in the AmTrust account, Barbara Joseph could be held liable for conversion if she exercised dominion over the funds, knowing of Chanin's claim. See Goodwin v. Alexatos, 584 So.2d 1007, 1011 (Fla. 5th DCA 1991) (citing Wilson Cypress Co. v. Logan, 120 Fla. 124, 162 So. 489 (1935), for the proposition that "[t]he recipient of converted property is liable to the rightful owner in an action for conversion"). Thus, Barbara Joseph became liable for conversion once she refused Chanin's request to return the money in the AmTrust account. See Uhl v. Holbruner, 146 Fla. 133, 136, 200 So. 359 (1941) (donee liable for conversion where donor of converted bonds had "no title" to convey and donee refused demand to return them); RESTATEMENT (SECOND) TORTS §§ 223, 229, 237 (1965).[3] By such act, Barbara Joseph exercised dominion over the funds inconsistent with Chanin's right to possess them.
*487 A finding that a conversion occurred is consistent with the view that "the essence of an action for conversion is not the acquisition of property by the wrongdoer, but rather the refusal to surrender the possession of the subject personalty after demand for possession by one entitled thereto." Murrell v. Trio Towing Serv., Inc., 294 So.2d 331, 332 (Fla. 3d DCA 1974) (citing 89 C.J.S. Trover and Conversion § 3 (1955); 18 AM.JUR.2D Conversion § 43 (1965)). The demand by the rightful owner gives "the person in possession actual notice of the rights of the person who is legally entitled to possession." Ernie Passeos, Inc. v. O'Halloran, 855 So.2d 106, 109 (Fla. 2d DCA 2003).
Sitomer, upon which Barbara Joseph relies, is distinguishable. Sitomer did not involve the type of conversion that is at issue here. The primary holding of that case is that a joint tenant's survivorship interest in funds withdrawn from a bank account does not continue after the funds are unilaterally withdrawn and appropriated by the other joint owner. Sitomer, 660 So.2d at 1115; see Beal Bank, 780 So.2d at 53 n. 8.
We also note the distinction between a conversion and an action to impose a constructive trust, a separate theory of recovery that might apply to a case such as this. Chanin argues that Sandler v. Jaffe, 913 So.2d 1205 (Fla. 4th DCA 2005), and Bruns v. Bruns, 682 So.2d 1159 (Fla. 4th DCA 1996), support her cause of action at law for conversion. However, both Sandler and Bruns involved the imposition of a constructive trust, an equitable remedy. See Collinson v. Miller, 903 So.2d 221, 228 (Fla. 2d DCA 2005).
The essence of Sandler and Bruns is that where one joint owner of funds has wrongfully transferred money from a joint account, the other joint owner may seek the imposition of a constructive trust over the transferred funds in the hands of a third party. A constructive trust is an equitable remedy available "in a situation where there is a wrongful taking of the property of another," Abele v. Sawyer, 750 So.2d 70 (Fla. 4th DCA 1999) or "when a confidential relationship has been abused." Hutson v. Brooks, 646 So.2d 276, 277 (Fla. 2d DCA 1994). "The trust is `constructed' by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem." Wadlington v. Edwards, 92 So.2d 629, 631 (Fla.1957) (citation omitted). A constructive trust may be imposed against a recipient of funds who has not engaged in the wrongful conduct that justifies the imposition of the trust. See Browning v. Browning, 784 So.2d 1145, 1148 (Fla. 2d DCA 2001). The remedy is "an extraordinary one," subject to the discretion of the court and traditional equitable defenses. Collinson, 903 So.2d at 228; see Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1025 (Fla. 4th DCA 1996).
The cause of action at issue in this appeal is conversion, an action at law submitted to the jury, not an equitable action seeking the imposition of a constructive trust. For this reason Sandler and Bruns do not control the result.
Based on the foregoing, we affirm the final judgment.
WARNER and KLEIN, JJ., concur.
NOTES
[1] We view the facts in the light most favorable to Chanin, the prevailing party in the circuit court. See, e.g., D'Amico v. Brightfelt, 924 So.2d 872 (Fla. 4th DCA 2006).
[2] The case also went to trial on the issue of whether Barbara Joseph converted a certificate of deposit at World Savings Bank. The jury found that no conversion occurred and that finding is not at issue in this appeal.
[3] Under RESTATEMENT (SECOND) TORTS § 237 cmt. f, (1965), had Barbara Joseph no longer possessed the money in an identifiable account at the time Chanin made her demand, she would not have been liable for conversion, although she may have been liable under other theories of recovery. This is not a case where a person received money as a gift and spent it, unaware of any competing claim to the funds.