**In re Royce S. LOCKE, Anna Locke, Debtors.**

**Bankruptcy No. 88–2373–BKC–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 19, 1989.

Leon M. Boyajan, II, Inverness, Fla., for debtors.

Gregory K. Crews, Jacksonville, Fla., Trustee.

### MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This Chapter 7 case is before the Court upon objection by the trustee to debtors' claim of exempt property. The suggested exemption relates to the future earnings of the racehorse "Bobbin's Key." A hearing on the objection was held March 6, 1989, and upon the evidence presented, the Court enters the following Memorandum Opinion:

### FACTS

Debtor Royce S. Locke ("Locke") was the owner of the mare which foaled the thoroughbred racing horse known as "Bobbin's

Key." During the two years of ownership of the foal, Locke did not receive any compensation for feeding and care.

Locke no longer owns "Bobbin's Key" nor is he responsible for the care and upkeep. However, pursuant to the rules of the Florida Breeder's Association, he will receive a percentage interest in any winning purse. Locke has claimed this interest as exempt property pursuant to § 222.11, Florida Statutes (providing an exemption for "wages").

## DISCUSSION

■ The initiation of a bankruptcy case creates an estate which is comprised of all of the debtor's property as defined in § 541 of the Bankruptcy Code, including, "... all legal or equitable interests of the debtor in property as of the commencement of the case...." However, an individual debtor may exempt property from his/her bankruptcy estate by claiming certain exemptions authorized by § 522 of the Bankruptcy Code.

Section 522 gives a debtor a choice between two exemption schemes. First, the debtor may choose the federal exemptions prescribed in subsection (d), or alternatively, he may choose the exemptions to which he is entitled under other federal law and the law of the State of his domicile. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 360–61 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

However, under § 522, a state may, by legislation, limit a debtor's right to claim the federal exemptions as an alternative to those provided under state law. The State of Florida has exercised this privilege and has prohibited residents of this state from claiming the federal exemptions set forth in § 522(d) of the Bankruptcy Code. § 222.20, Florida Statutes (1977). Instead, the Florida legislature has promulgated its own set of exemptions which may be found in Article X, Section 4, of the Florida Constitution and in Chapter 222, Florida Statutes.

One such exemption is set forth in Florida Statute § 222.11, which provides in part:

No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when the money or other thing is due for the personal labor or services of such person.

Florida Statute § 222.11.

Through enactment of this statute, the Florida legislature evidenced an intent to protect the fruit of one's labor for the benefit of his family. It did not, however, intend to include income earned on passive investments. As this Court observed in *In re Montoya*, 77 B.R. 926 (Bkrtcy.M.D.Fla. 1987):

> By inserting the word 'personal' into the key phrase, the legislature excluded from this protection income that is derived from passive sources, such as investment income or return on capital. The fruits of a debtor's day to day efforts are protected whereas the fruits of his collected wealth are not.

*Id.* at 928.

It is obvious that any income derived from Bobbin's Key would be in the nature of passive income, that is, a return on Locke's investment in the care and raising of the horse prior to its sale, and not from any form of personal services contemplated by the statute. Thus, the potential earnings cannot be considered "wages" within the meaning of the statute.

Locke contends that since he no longer has any rights or responsibilities relative to the horse and will have received no compensation for his past services, the only "wages" he will receive will be from the horse's winnings. This argument is misplaced. The benefit Locke received for his services to the horse was realized upon its sale, and within that sale was the contractual right to a percentage of the future winnings. This clearly falls outside the scope of § 222.11.

In claiming this exemption, debtor has misinterpreted § 222.11 to include the proceeds flowing from the potential benefit of a contractual obligation. This interpreta-

tion would be contrary to the weight of precedent. For example, in *In re Malloy*, 2 B.R. 674 (Bkrtcy.M.D.Fla.1980), this Court held that unpaid renewal commissions owed to an insurance salesman were not exempt as money due for personal labor or services under the statute. Certainly, the situation presented by the debtor cannot be said to be so different from that of *Malloy* to warrant expansion of the narrow scope of § 222.11.

## CONCLUSION

 The deferred payment of funds due under a contract is not exempt under § 222.11. Any interest of the debtors in the future winnings of Bobbin's Key arises by virtue of a contractual arrangement and cannot be claimed as exempt property under Florida law.

Accordingly, the trustee's objection to the debtors' claim of exemption will be sustained. The debtors' interest in future winnings is subject to administration as property of the estate. (11 U.S.C. § 541).

The Court will enter a separate order in accordance with these findings.