660 So.2d 1111 (1995)
Jack SITOMER, Doris Goldbring and Rose Wishansky, Appellants,
v.
Richard M. ORLAN, as Guardian for Belle Orlan Sitomer, Appellee.
No. 93-1205.
District Court of Appeal of Florida, Fourth District.
August 30, 1995.
Rehearing, Stay, and Certification Denied October 13, 1995.
*1112 Frank B. Kessler, Lake Worth, for appellants.
Charles J. Kane of Greenspan & Kane, Boca Raton, for appellee.
GROSS, ROBERT M., Associate Judge.
Appellants appeal from a final judgment which allowed appellee to assert an ownership interest in money which had been unilaterally transferred to third parties from a joint bank account by a joint owner. The jury instructions as given by the trial court improperly instructed the jury that if joint accounts with rights of survivorship had been created, then the transferred funds could be recovered from third parties. Because the continuation of an interest in the funds after an unauthorized withdrawal is a feature unique to tenancies by the entireties, we reverse.
Appellee, Richard Orlan, was appointed guardian of his mother, Belle Orlan, in 1988. He brought this action on her behalf to recover from appellants, siblings of Irving Sitomer, the money withdrawn by Irving Sitomer from certain joint accounts.
Belle Orlan's first husband died in March 1980. On December 18, 1981, she married Irving Sitomer. Soon afterwards, the couple opened accounts at several financial institutions. The accounts were titled "Irving Sitomer or Belle Sitomer." At trial, one bank's representative testified that this account title established a joint account with right of survivorship. Further, the signature card designated the account as a joint account with right of survivorship.
In late 1985, Irving Sitomer began to withdraw funds from the joint accounts and deposit them in accounts either in his name or in trust for his siblings. That same year, he sent sums of money to Belle Orlan's two sons. Beginning in 1985, Belle's health deteriorated and in October 1986 she was diagnosed with Alzheimer's disease. In 1987, Irving Sitomer wrote a last will which disinherited his wife. He died in August 1988. Money contained in the "trust" accounts opened by Irving was distributed to appellants. Appellee successfully asserted his *1113 mother's ownership interest in those funds in the lower court.
The difficulty in this case arises from the confusion over two forms of bank account ownership  tenancy by the entirety and joint tenancy with right of survivorship. Appellee asserts that a tenancy by the entireties is not a form of ownership applicable to joint bank accounts. However, tenancies by the entireties in bank accounts have been recognized in Florida since 1925. Bailey v. Smith, 89 Fla. 303, 103 So. 833 (Fla. 1925); see generally, First Nat'l Bank of Leesburg v. Hector Supply Co., 254 So.2d 777 (Fla. 1971).
This confusion, which has engendered much litigation, results from the application of real property concepts to bank accounts and the fact that banking practices do not require account holders to expressly delineate the form of ownership they are creating in the jointly held monies.[1] The case law has been confusing and contradictory, described as "a state of morass." See Wiggins v. Parson, 446 So.2d 169, 171 (Fla. 5th DCA 1984). As recognized in In re Lyons' Estate, 90 So.2d 39, 42 (Fla. 1955):
[E]states by the entireties in personal property, including bank accounts, may exist but we must confess that it is difficult to apply the principle to bank accounts because of their very nature. Such accounts when constituting estates by the entireties resemble closely joint accounts created for convenience and, of course, both are more likely than not to fluctuate, while estates by the entireties in real estate are static and any dissolution of them cannot be accomplished without both parties being fully aware of the action.
The two forms of ownership  joint tenancy with the right of survivorship and tenancy by the entireties  are similar and share many of the same characteristics. A joint tenancy bank account, whether or not created by the entireties, must have four essential characteristics of form: the unity of possession (joint ownership and control); the unity of interest (the interests must be the same); the unity of title (the interests must originate in the same instrument), and the unity of time (the interests must commence simultaneously). Andrews v. Andrews, 155 Fla. 654, 656, 21 So.2d 205, 206 (1945); see First Nat'l Bank of Leesburg, 254 So.2d at 781 (Fla. 1971). There is also the characteristic of survivorship.[2]Andrews, 21 So.2d at 206. In addition to these attributes of a joint tenancy, a tenancy by the entirety possesses one more  the unity of marriage. First Nat'l Bank of Leesburg, 254 So.2d at 781. It can only exist between husband and wife. Quick v. Leatherman, 96 So.2d 136, 138 (Fla. 1957).
A unique aspect of a tenancy by the entirety is that each spouse is "seized of the whole or the entirety, and not of a share, moiety, or divisible part." Bailey, 103 So. at 834; First Nat'l Bank of Leesburg, 254 So.2d at 780. The important attribute separating a joint tenancy from a tenancy by the entirety is that in a tenancy by the entirety neither spouse may sever or forfeit any part of the estate without the assent of the other, so as to defeat the right of the survivor. Bailey, 103 So. at 834; Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727, 728 (1941) ("estates by the entirety are predicated on the unity of husband and wife making them one person in law"); First Nat'l Bank of Leesburg, 254 So.2d at 780; Andrews, 21 So.2d at 206. On the other hand, a joint tenancy may be terminated *1114 by a joint tenant's conveyance of an interest to a stranger, which destroys the unities of possession and title. Wittock v. Ramponi, 446 So.2d 271 (Fla. 4th DCA 1984); Kozacik v. Kozacik, 157 Fla. 597, 26 So.2d 659 (Fla. 1946). A joint owner's withdrawal of funds from a joint bank account terminates the "joint tenancy nature of the [funds] and severs the right of survivorship as to the funds withdrawn." Wiggins, 446 So.2d at 172 (Fla. 5th DCA 1984).[3]
Entireties accounts are not so fragile when it comes to preserving the right of a spouse to the whole of a bank account. The non-severability aspect of a tenancy by the entirety precludes a bank account so held from being subject to execution to satisfy an individual debt of either spouse. E.g., Sheeler v. U.S. Bank of Seminole, 283 So.2d 566 (Fla. 4th DCA 1973); First Nat'l Bank of Leesburg, 254 So.2d at 781. Significantly for this case, the nonseverability doctrine preserves the entireties status of funds even after one spouse renames an account or transfers money from it without the consent of the other.
The leading case of In re Lyons' Estate, 90 So.2d 39 (Fla. 1955), involved two joint bank accounts opened in the names of both husband and wife. The wife neither deposited money into the accounts nor did she make any withdrawals. Several years later, the husband closed one account and deposited the funds into a new bank account in his name only. On the second account, the husband had the wife's name stricken so that it was carried in his name alone. The wife knew nothing of these changes. After the husband's death, the wife sought to assert a claim over the new accounts as the survivor, so that the money would not be subject to probate distribution to others. As analyzed by the supreme court, the wife's right to assert a claim over the new accounts turned on whether the original ones were tenancies by the entireties.
Two savings accounts ... are involved in this litigation. If they constituted estates by the entireties ... they belong to the widow; if not, they must be administered.
Id. at 40. Lyons is based on the proposition that only with entireties accounts, which require the assent of both owners to expend funds, may one owner recover funds after they are unilaterally transferred from the account by the other owner. Because neither account in Lyons constituted an estate by the entirety, the supreme court refused to allow the wife to assert her ownership over them.
While Lyons involved a dispute between a wife and her husband's estate, Lerner v. Lerner, 113 So.2d 212 (Fla. 2d DCA 1959), allowed a spouse to recover funds from the possession of a third party after they had been transferred without her consent from an entireties account. There, a husband transferred funds from a bank account without the knowledge or consent of his wife and made a gift to his brother for no consideration. After the husband's death, the wife's suit against her brother-in-law sought to recover the gifted money. Finding that the bank account had been an "estate by the entireties," the second district allowed the wife to recover the funds, holding that the brother had "failed to gain any beneficial interest in said funds as against the claim of the surviving spouse." Id. at 215. Read together, Lyons and Lerner support the conclusion that only where a tenancy by the entirety has been created, may a spouse recover funds transferred to third parties by the other spouse, without the former's consent.[4]
Much of the difficulty in this case comes from In re Guardianship of Medley, 573 So.2d 892 (Fla. 2d DCA 1990), jurisdiction accepted on other grounds, 583 So.2d 1036 (Fla. 1991), dismissed on other grounds, 629 So.2d 134 (Fla. 1993), upon which appellee primarily relies and upon which the jury instructions were based. Medley equated a *1115 joint tenancy with right of survivorship with a tenancy by the entireties by holding that even a joint tenant's interest in funds would continue after they were unilaterally withdrawn and appropriated by the other owner. 573 So.2d at 897. Such a position is contrary to the holding of the supreme court in Lyons and blurs the distinction between joint accounts and entireties accounts that is well established in Florida law.[5]
Apparently misled by Medley, the trial court did not instruct the jury on the differences between joint tenancies and entireties and incorrectly indicated that if the jury were to find that joint accounts with rights of survivorship had been created, then the transferred funds could be recovered from Irving Sitomer's siblings. On retrial, the fact issue to be submitted to the jury is whether the Sitomers created tenancies by the entireties and, if so, whether Belle knew of or consented to the fund transfers at issue.
Whether the parties created a tenancy by the entireties in a bank account  whether they were each taking the whole of the account  is a question of fact.
So long as a bank account contract or signature card is drafted in a manner consistent with the essential unities of the entireties estate, and so long as it contains a statement of permission for one spouse to act for the other, the requirements of form of the estate will have been met. However, since the form will be similar to that of a joint tenancy, and since the spouses may or may not intend that a tenancy by the entireties should result, the intention of the parties must be proven unless the instrument creating the tenancy clearly bears an express designation that the tenancy is one held by the entireties. ...
First Nat'l Bank of Leesburg, 254 So.2d at 781 (emphasis in original).
Given the difficulty caused by the application of real property principles to banking law and banking practices which fail to recognize the subtle, yet significant distinction between joint tenancies and tenancies by the entireties, courts have been forced to resort to examining various factors which would be indicative of an entireties account. In determining whether an entireties account has been created so that transfer of funds by one spouse would not end the other's interest in those funds, courts will consider it significant: (1) that both parties contributed to the account, cf. Winters v. Parks, 91 So.2d 649, 650 (Fla. 1956); (2) that both parties made use of the account, id. at 650; Lyons, 90 So.2d at 40; (3) that there is testimony that both spouses "owned" the account, Marine Midland Bank-New York v. Arms, 409 So.2d 215 (Fla. 4th DCA 1982); (4) that funds from the account went to pay marital expenses, see Robinson v. Robinson, 651 So.2d 1271, 1273-74 (Fla. 4th DCA 1995); cf. Winters, 91 So.2d at 650 (finding no tenancy by the entirety where the husband "dealt with the funds, making investments and buying property as any individual would with his own money"); (5) that the parties made statements indicating their intentions concerning the account, such as to protect it from creditors of one of them, Terrace Bank of Florida v. Brady, 598 So.2d 225, 228 (Fla. 2d DCA 1992); McGillen v. Gumpman, 171 So.2d 69, 70 (Fla. 3d DCA 1965), and (6) that the accounts were opened with the "intention that each spouse ... should have the use of all or any part of the balance at any time and that upon the death of either any remainder should immediately become the property of the survivor," Hagerty v. Hagerty, 52 So.2d 432, 434 (Fla. 1951). The signature card's designation as a joint account with right of survivorship does not preclude the creation of an entireties account. See, e.g., Winters, 91 So.2d at 652.
*1116 In sum, the ultimate fact question is whether each party was to be the owner of the entire account, as husband and wife, so that transfers could not be made without the consent of both of them. There was evidence at trial from which the jury might have concluded that the Sitomers intended to establish entireties accounts. Before the marriage, Belle told her children that she and Irving intended to pool all of their assets, and begin a financial partnership. Both parties contributed funds to the accounts. On retrial, these are some of the factors the jury could consider in deciding what type of accounts the Sitomers created.
REVERSED AND REMANDED.
KLEIN and PARIENTE, JJ., concur.
NOTES
[1] In 1956, the Supreme Court noted that much litigation involving bank accounts could be avoided if depositors and banks, when the account is first established, would "add language to the signature card stating clearly whether it is or is not intended to create an estate by the entirety." Winters v. Parks, 91 So.2d 649, 652 (Fla. 1956). Another remedial statutory change would be the requirement that both account owners sign entireties account checks.
[2] At common law, the doctrine of survivorship was an incident of all joint tenancies. Lynch v. Murray, 139 F.2d 649, 651 (5th Cir.1943). The common law doctrine was abrogated by statute. Section 689.15, Florida Statutes (1993), now provides in pertinent part that the doctrine of right of survivorship shall not apply to personal property held by joint tenants, "unless the instrument creating the estate shall expressly provide for the right of survivorship." However, for bank and credit union accounts, section 655.79, Florida Statutes (1993), creates the presumption that two persons intended to create a survivorship account when they opened an account, unless the signature card expressly provides otherwise.
[3] As the court noted in Wiggins, a withdrawing joint tenant is still "liable and accountable to the other joint owner for that person's share." 446 So.2d at 172.
[4] Because it is not before us, we do not consider under what circumstances the third party receiving funds might raise a defense, such as the furnishing of consideration, to the claim of the spouse seeking recovery.
[5] Another example of the confusion in this area is Simpson v. Schoenemann, 263 So.2d 854 (Fla. 1st DCA 1972), relied upon by appellants. In that case, a wife, shortly before her death, closed bank accounts and gave the proceeds to her niece. The husband sought to recover the funds from the niece after his wife's death. The First District did not decide whether the accounts were entireties or joint accounts, because it held that for both forms of ownership, the right of one spouse to withdraw funds would defeat the right of the other to assert a claim over the transferred funds in the hands of a third party. 263 So.2d at 855, 857-58. Simpson cited neither Lyons nor Lerner and it is in conflict with both.